IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FERNANDO PAZ, ARMANDO BERMUDEZ, ANDRES S. IRIZARRY, AND JESSE SOTO,** on behalf of themselves and all other plaintiffs similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> **THE CHEFS' WAREHOUSE MIDWEST, LLC, A/K/A THE CHEFS' WAREHOUSE MID-WEST LLC, AND MICHAEL STANLEY, INDIVIDUALLY,** <br><br> Defendants. | No. 1:21-cv-06786 <br><br> **Hon. District Court Judge Sharon Johnson Coleman** <br><br> Hon. Magistrate Judge Maria Valdez |

### JOINT MOTION FOR APPROVAL OF INDIVIDUAL SETTLEMENTS AND DISMISSAL OF CLAIMS WITHOUT PREJUDICE

Plaintiffs Fernando Paz, Armando Bermudez, Andres Irizarry, Jesse Soto and Opt-In Plaintiff Joaquin Lopez ("Plaintiffs"),[1] and Defendants The Chefs' Warehouse Midwest, LLC ("CW") and Michael Stanley (collectively, "Defendants," together with Plaintiffs, "the Parties"), file this Joint Motion for Approval of Settlement and Dismissal of Claims without Prejudice ("Motion").

**I.    SUMMARY OF PROCEEDINGS AND SETTLEMENT TERMS**

Plaintiffs worked as salaried Drivers for CW, subject to a collective bargaining agreement. They filed their Complaint in December of 2021 and a substantively identical First Amended Complaint ("FAC") in February of 2022, contending that Defendants misclassified them as exempt and failed to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq* ("IMWL") and the Chicago

---

[1] Unless otherwise noted, this Motion will refer to all five individuals as "Plaintiffs." Plaintiff Joaquin Lopez opted in on December 9, 2022. Dkt. 49-1.

1

Minimum Wage Ordinance ("CMWO"), § 6-105-040 of the Municipal Code of Chicago ("Wage Lawsuit"). Dkt. 1, 21. Plaintiffs intended to pursue the FLSA claim as a collective action and the IMWL and CMWO claims as a class action per F.R.C.P. Rule 23. Defendants contend that Michael Stanley was not Plaintiffs' employer[2] and that Plaintiffs were properly classified as exempt pursuant to the Motor Carrier Act exemption ("MCA Exemption") and therefore not owed any overtime, among other defenses.

The Parties commenced written discovery soon after the filing of the FAC, and Plaintiffs filed their Motion for Stage-One Conditional Certification on November 4, 2022. Dkt. 36-38. A few weeks later, the Parties began discussing the possibility of individual settlements and on December 8, 2022, Plaintiffs withdrew the Conditional Certification Motion to give the Parties time for these discussions. Dkt. 46. On December 9, 2022, Plaintiff Joaquin Lopez filed his consent to be a Party-Plaintiff. Dkt. 49-1.

Settlement discussions were ongoing until January 31, 2023, when Plaintiffs moved to amend the FAC to add a claim against CW under the Illinois Biometric Information and Privacy Act ("BIPA"). Dkt. 53, 54 (Motion to Amend). The proposed new claim alleged that CW violated BIPA by failing to develop a written biometric information policy and by failing to notify and get consent from employees before collecting their biometric information. *Id*. The Parties engaged in motion practice and on May 15, 2023, the Court denied the Motion to Amend. Dkt. 81. On May 25, 2023, Plaintiffs Paz, Bermudez, Irizarry, and Soto filed a new complaint against CW in the United States District Court, Northern District of Illinois, alleging the same BIPA violations noted above. Case No. 1:23-cv-03337 ("BIPA Lawsuit"). On July 17, 2023, Plaintiffs filed a First Amended Complaint

---

[2] While this Motion generally refers to "Defendants" in the collective, Defendants continue to maintain that Michael Stanley was never Plaintiffs' employer.

2

in the BIPA Lawsuit, adding Joaquin Lopez as a named plaintiff. BIPA Lawsuit, Dkt. 8. The BIPA Lawsuit is currently before the Honorable Judge Charles B. Kocoras.

After the Court denied the Motion to Amend, the Parties continued negotiating a settlement of the Wage Lawsuit and exchanged information to allow for informed and productive settlement negotiations. Defendants elaborated on their position regarding the MCA Exemption, produced Plaintiffs' time and pay data, and provided a detailed breakdown of potential damages (while maintaining that Plaintiffs were properly classified as exempt) as well as authority for their position that the fluctuating workweek method of calculation applied to substantially limit any alleged overtime owed.

The Parties reached an agreement as to the total settlement amount on June 16, 2023. This amount includes a damages portion to each of the five Plaintiffs and attorney's fees and costs. The damages portion arose from Defendants' initial estimation of potential overtime owed to Plaintiffs *if* they were misclassified and is allocated equally between alleged unpaid wages (50%) and liquidated damages (50%). Under the terms of the agreements, CW will pay Plaintiff Fernando Paz $177.00; Plaintiff Armando Bermudez $1,194.00; Plaintiff Jesse Soto $1,096.00; Plaintiff Andres Irizarry $3,245.00; and Opt-In Plaintiff Joaquin Lopez $1,430.00 ($7,142, or the "Plaintiffs' Settlement Consideration"). CW will also pay $15,000 to Plaintiff's counsel, Billhorn Law Firm, for attorneys' fees and costs—an amount that represents a discount from the approximately $21,600 that Plaintiff's counsel contends to have spent on fees and costs through mid-June 2023, excluding the Motion to Amend (together with the Plaintiffs' Settlement Consideration, the "Total Settlement Amount"). For and in consideration of these payments, Plaintiffs agree to dismiss the Wage Lawsuit—initially without prejudice through this Motion and, once the Court approves the Motion, Plaintiffs execute their agreements and CW tenders the Total Settlement Amount, with prejudice as

to Plaintiffs and without prejudice as to all other class members. Each Plaintiff's settlement agreement also includes a general release with a carve-out that allows Plaintiffs to continue litigating the BIPA Lawsuit. *See generally* Declaration of Galit Knotz ("Knotz Decl."), Exhibit A (Plaintiffs' unexecuted individual settlement agreements).

This settlement was negotiated by experienced counsel who believe it is a fair and reasonable compromise of Plaintiffs' claims. The Parties now seek approval of their negotiated settlements.

## II. ARGUMENT

Some courts in this district have held that "allow[ing] waiver of statutory wages by agreement or waiver of the employee's right to liquidated damages 'would nullify the purposes of the Act'." *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *4 (N.D. Ill. 2001) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). These courts have required approval of settlement of claims for unpaid overtime wages under the FLSA from the Department of Labor or from a district court. *See Ladegaard*, 2001 WL 1403007 at *2; *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 349 (N.D. Ill. 2001).

"Courts routinely approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289, at *3 (N.D. Ill. Sept. 21, 2017). "Generally speaking, if the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.*.; *see also Kujat v. Roundy's Supermarkets Inc.*, 2021 WL 4551198, at *1 (N.D. Ill. Aug. 11, 2021) (FLSA settlement was the result of "contested litigation" where defendants denied the allegations of misclassification, the settlement was the result of "arm's-length negotiations," and the parties reached their settlement after engaging in discovery). If a court is satisfied that an FLSA settlement is the product of contested litigation, approval of the settlement is usually appropriate. *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16,

4

2016). Indeed, there is a "strong presumption" that FLSA settlements like these, entered by represented parties in the context of a lawsuit, are fair and reasonable. *Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable). Such deference is warranted because "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement," and "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).

### A. The Court Should Exercise Jurisdiction Over the Opt-In Plaintiff for Settlement Purposes

As an initial matter, the parties request that the Court exercise jurisdiction over the opt-in plaintiff, Joaquin Lopez, for settlement purposes. Opt-in Plaintiff Lopez was part of comprehensive settlement discussions in this matter. Defendants do not object to this Court exercising jurisdiction over his claims for settlement purposes.

### B. A Bona-Fide Dispute Existed Under the FLSA

The parties have a bona fide dispute under the FLSA. First, a bona fide dispute exists as to whether Plaintiffs were properly classified as exempt under the MCA exemption such that they have no standing to bring an overtime claim in the first place. 29 U.S.C. § 213(b)(1) (listing an exemption to the FLSA's overtime requirements for employees covered under MCA and thus subject to the jurisdiction of the Secretary of Transportation).[3] Defendants have maintained from the onset of this lawsuit that the MCA exemption applies to Plaintiffs because (1) CW is the owner of products

---

[3] The IMWL and the CMWO contain analogous exemptions. *See* 820 ILL. COMP. STAT. § 105/3(d)(7); Chicago Municipal Code, § 6-105-010; *see also Turk v. Buffets, Inc.*, 940 F. Supp. 1255, 1262 (N.D. Ill. 1996) (finding IMWL claim failed because the plaintiff's FLSA claim failed); *Barron v. Lee Enterprises, Inc.*, 183 F. Supp. 2d 1077, 1088 (C.D. Ill. 2002) (same).

shipped through interstate and foreign commerce to its customers; and (2) Plaintiffs' job activities as drivers included the transportation of out-of-state goods to intrastate customers – a job activity that is explicitly recognized by the Seventh Circuit as a "leg" of interstate commerce. *See* 29 C.F.R. § 782.2(a) (factors for MCA exemptions); *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009) (same in the context of drivers transporting out-of-state goods).

Second, even if the MCA exemption does not apply and Plaintiffs prevailed on liability and were credited with all overtime hours worked as claimed, a bona-fide dispute exists over how Plaintiffs' damages should be calculated. Defendants maintain that the fluctuating workweek method applies to Plaintiffs' alleged overtime damages, if any. This method for calculating overtime permits employers to pay half-time, rather than time-and-a-half, to certain salaried employees whose hours of work fluctuate from week to week. *See* 29 C.F.R. § 778.114(a); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010).[4] Defendants maintain that, in the unlikely event that the Court determines that Plaintiffs were misclassified, the fluctuating workweek method applies to Plaintiffs' alleged overtime damages because Plaintiffs received a fixed salary; their hours fluctuated from week to week; there was a clear mutual understanding between CW and Plaintiffs that Plaintiffs' fixed salary represented all straight-time pay for all hours worked each workweek, as exhibited in the applicable collective bargaining agreement; and Plaintiffs' salaries compensated them at no less than the minimum wage for all hours worked. *See Young Chul Kim v. Cap. Dental Tech. Lab'y, Inc.*, 279 F. Supp. 3d 765, 773 (N.D. Ill. 2017) (listing factors). Thus, Defendants maintain that the fluctuating workweek doctrine applies to greatly reduce any alleged overtime owed.

Third, CW maintains that it acted in good faith such that liquidated damages are not warranted given its reliance on the MCA exemption in classifying Plaintiffs as exempt employees.

---

[4] The fluctuating workweek approach is permitted under the Illinois wage statute as well. Ill. Admin. Code tit. 56 § 210.430(f).

*See Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 733 (7th Cir. 1998) (no liquidated damages where the employer "was acting in good faith and reasonably believed that its conduct was consistent with the law.") (citing 29 U.S.C. § 260).

### C. The Proposed Settlement is Fair and Reasonable

Given the above-stated defenses and the risk and costs of litigation, the proposed settlement is fair and reasonable. First, the Plaintiffs' Settlement Consideration is fair and reasonable. Because Plaintiffs documented their time worked and do not allege off-the-clock work, CW's timekeeping records reflect all hours that Plaintiffs worked over 40. Based on its calculations, CW represents that the Plaintiffs' Settlement Consideration *exceeds* any backpay Plaintiffs could recover under the fluctuating workweek method of calculating overtime, and thus is clearly reasonable.[5] Indeed, courts routinely approve FLSA settlements are considerably less than the plaintiffs' potential recovery. Plaintiffs' recovery under this settlement thus falls well within the range of reasonable recoveries for FLSA settlement approval. *See, e.g., Binissia v. ABM Indus.*, 2017 U.S. Dist. LEXIS 153686, at *20-21 (N.D. Ill. Sep. 21, 2017) (holding FLSA collective action settlement providing "13% or 27% of the maximum net recovery falls in the range of a reasonable settlement outcome for the class members.") (citing *Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645, 2017 WL 1425837, at *7 (N.D. Ill. Apr. 20, 2017) (citing cases describing recoveries of 25-75% of claimed wages as exceptional)); *see also Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial); *Lazy Oil Co. v. Witco*, 95 F.Supp.2d 290, 339 (W.D. Pa. 1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of damages within the limitations period); *In re*

---

[5] Under CW's calculations, the Plaintiffs' Settlement Consideration of $7,142 exceeds any overtime wages allegedly owed to Plaintiffs by over $900 under the fluctuating workweek method of calculating overtime based on a three-year limitation period. Knotz Decl. ¶ 3.

*Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; an agreement that secures roughly six to twelve percent [6-12%] of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness").

The settlement thus provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. Should this litigation continue, there are a range of possible outcomes including ones far less favorable to Plaintiffs and the settlement members, including the very real prospect that they might receive nothing at all. Indeed, significant litigation risks remain in avoiding decertification, proving liability, and establishing damages, and aspects of the case could be subject to ultimate rejection. Avoiding the delay and risk of protracted litigation also supports granting final approval of the settlement. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider "the complexity, expense, and likely duration of the litigation).

The Settlement Agreement is also fair in that explicitly permits Plaintiffs to continue litigating their BIPA claims in the BIPA Lawsuit. As such, Plaintiffs are not giving up more than they bargained for in entering into the settlement agreements in consideration for the Settlement Proceeds.

        D.      **The Attorneys' Fees are Reasonable**

The Court's evaluation of an FLSA settlement includes an evaluation of the reasonableness of the attorneys' fees sought. *Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289, at

8

*3 (N.D. Ill. Sept. 21, 2017). In FLSA actions, the Seventh Circuit has made clear that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—known as the "lodestar." *Id*. (citing *Anderson v. AB Painting & Sandblasting Inc*., 578 F.3d 542, 544 (7th Cir. 2009)).

Plaintiffs' counsel has represented that they spent $21,582 in fees and costs through mid-June 2023, excluding the failed Motion to Amend, and by the signature to this Motion by senior counsel John W. Billhorn, hereby represent and declare that the following time and fees were incurred:

- Attorney Sam Engelson 35 hours x his NDIL approved rate of $300 (= $10,500)
- Attorney John Billhorn 13 hours at approved rate of $575 (= $7,475)
- Paralegal Jodi Hoare with 22 hours @ $145 (= $3,190).
- Costs are $417.00, which includes a $402 filing fee and $15 for service.

As such, Plaintiffs' counsel are seeking a 30% reduction from the fees and costs they claim they are owed, as the settlement allots $15,000 of the $21,582. Courts approve such requests as reasonable. *See, e.g., Parker v. Villa of Greenfield LLC*, No. 20-CV-1696-PP, 2022 WL 16659191, at *4 (E.D. Wis. Nov. 3, 2022) (approving a lodestar request based on a 30% reduction in fees and costs). Moreover, it does not signify that the requested fees are higher than the Plaintiffs' Settlement Consideration because "proportionality between fees and damages is not required . . . . given the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case." *Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 12356838, at *5 (E.D. Wis. Nov. 15, 2012) (citations omitted). Finally, Defendants do not object to the reasonableness of Plaintiffs' counsels' fees for purposes of this Motion; indeed, "[t]he parties

9

bargained for this fee amount." *Binissia*, 2017 WL 4180289, at *4. In short, the Court should approve the amount of fees requested.

## III. CONCLUSION

The Parties respectfully request that the Court approve the settlements and dismiss this case without prejudice as to Plaintiffs and class members until such time that Plaintiffs move the Court to convert the dismissal to one with prejudice as to them.

Respectfully submitted,

*Electronically Filed 08/08/2023*

/s/ *Julia Y. Trankiem*

Michele J. Beilke (admitted *pro hac vice*)
Julia Y. Trankiem (ARDC # 6287553)
Galit A. Knotz (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
(213) 532-2000
mbeilke@hunton.com
jtrankiem@hunton.com
jyoon@huntonak.com

Attorneys for Defendants
THE CHEFS' WAREHOUSE MIDWEST, LLC and
MICHAEL STANLEY

Kalia M. Coleman
Brenna M. Woodley
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
bwoodley@rshc-law.com
kcoleman@rshc-law.com

Local counsel for Defendants

By: */s/ John W. Billhorn*

John W. Billhorn
Samuel D. Engelson
BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312) 853-1450
jbillhoorn@billhornlaw.com
Attorneys for Plaintiff, and all other Plaintiffs similarly situated, known and unknown

11